# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2360

BEHAVIORAL INSTITUTE OF INDIANA, LLC
and 61ST AVENUE BUILDING, LLC,

*Plaintiffs-Appellants*,

v.

HOBART CITY OF COMMON COUNCIL,
SCHOOL CITY OF HOBART, CITY OF
HOBART, INDIANA, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 04 C 19—**Rudy Lozano**, *Judge.*

———————

ARGUED DECEMBER 1, 2004—DECIDED MAY 9, 2005

———————

Before FLAUM, *Chief Judge*, and EVANS and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.*   In this appeal we review the district court's dismissal of the plaintiffs' complaint as time-barred by the statute of limitations. The case stems from a land use dispute in the City of Hobart, Indiana, over a proposed residential treatment facility for emotionally

disturbed children. The plaintiffs' application for a zoning variance for the proposed facility was denied, a decision that was later overturned by the Indiana Court of Appeals on various state and federal constitutional grounds. In the meantime, however, the plaintiffs sold the property. They then filed suit in Indiana state court alleging causes of action under 42 U.S.C. § 1983 for violation of their federal due process and equal protection rights, as well as violations of the Indiana Constitution. The case was removed to the United States District Court for the Northern District of Indiana, which dismissed the § 1983 claims pursuant to Indiana's two-year personal injury statute of limitations. We affirm.

## I. Background

A more detailed narration of events leading up to this action is provided in the Indiana Court of Appeals' decision in the plaintiffs' earlier case. *See City of Hobart Common Council v. Behavioral Inst. of Ind., LLC*, 785 N.E.2d 238 (Ind. Ct. App. 2003). We take the pertinent facts from that opinion as well as the record before us. The Behavioral Institute of Indiana, LLC and 61st Avenue Building, LLC (collectively, "the Institute") applied to the City of Hobart for a land use variance permitting the operation of a sixty-bed, for-profit, court-ordered child placement facility for emotionally disturbed children in an area zoned for single-family residential and related uses. The previous occupant of the building had operated a psychiatric hospital under a conditional use permit that expired by operation of law when the occupant vacated the premises. A hearing on the Institute's request was held before the City's Board of Zoning Appeals ("the Board"), which heard testimony in support of and opposition to the Institute's application. At the conclusion of the hearing, the Board voted unanimously to recommend granting the variance.

In most Indiana counties the Board of Zoning Appeals is the final municipal authority on use variances, but in Lake County, where Hobart is located, and also in St. Joseph County, the ultimate decision-making authority on use variances, as well as special exceptions and special use permits, is vested in the municipality's legislative body. *See* IND. CODE ANN. § 36-7-4-918.6 (West 2004). In Hobart the legislative body is the Common Council. In accordance with the statute, the Council received the Board's nonbinding recommendation to grant the variance and scheduled a hearing on the matter.

Before the hearing was convened, the Hobart city engineer, who had testified against the variance before the Board, circulated materials to members of the Common Council in an effort to defeat the Institute's application. While some of this material merely recapitulated his earlier testimony, the city engineer also included previously unstated factual assertions concerning the likely effect of the Institute's proposed land use on surrounding property values and the safety risk to nearby residents. This material was not provided to the Institute. In addition, before the Council took up the variance request, at least two officials of the Hobart Schools—also an opponent of the variance—spoke with members of the Council to persuade them to vote against the variance, also without notice to the Institute. One of those school officials was herself a member of the Common Council. After a hearing and discussion of the Institute's request, the Council met and denied the variance on February 21, 2001.

The Institute filed a petition for a writ of certiorari in the Lake County Superior Court, alleging that the Council violated its right to due process and equal protection and seeking an order directing the Council to issue a variance. The court concluded that the Institute's due process and equal protection rights in fact had been violated for the reasons suggested above. The court held that applicants for

zoning variances in Lake and St. Joseph Counties are entitled to the same due process protections as applicants in all other counties in Indiana. In addition, finding substantial evidence that the Institute had met the statutory requirements for a land use variance, the court approved the Board's recommendation and ordered the Common Council to grant the variance.

The Indiana Court of Appeals affirmed the lower court's constitutional holdings but held that the court had exceeded its powers by ordering the issuance of the variance. The Court of Appeals remanded the case with instructions to return it to the Common Council for further proceedings consistent with due process. *City of Hobart*, 785 N.E.2d at 243. The Council dutifully set the matter for a new hearing, but by that time the Institute had sold the property.

The Institute then brought the present action in Lake County Superior Court, alleging causes of action under 42 U.S.C. § 1983 for violation of its federal due process and equal protection rights. The complaint also alleged claims pursuant to Article I, Section 23 of the Indiana Constitution and asserted a separate cause of action for intentional violation of the plaintiffs' "rights to substantive due process under the 14th Amendment." The injury underlying each legal claim was the same: the defendants' denial of the Institute's request for a use variance. The defendants removed the case to federal district court and immediately filed a motion to dismiss all claims, asserting various grounds, including expiration of the two-year statute of limitations on the § 1983 claims. *See Hondo, Inc. v. Sterling*, 21 F.3d 775, 777 (7th Cir. 1994) (appropriate vehicle to challenge complaint for failure to comply with applicable statute of limitations is a motion under FED. R. CIV. P. 12(b)(6)); *but see Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000) (defendant need not raise statute of limitations in motion under Rule 12(b)(6) if it was raised in the defendant's

answer to the complaint). The district court held that the
§ 1983 claims were untimely and dismissed the case with
prejudice.[1]

## II.  Discussion

Section 1983 claims are subject to the statute of limi-
tations for personal injury actions in the state in which the
alleged injury occurred. *Wilson v. Garcia*, 471 U.S. 261, 276-
80 (1985); *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir.
1992). The Supreme Court has further held that in cases
where state law provides for multiple statutes of limitations
for different types of personal injury, the general or residual
statute is the one applicable to § 1983 claims. *Owens v.
Okure*, 488 U.S. 235, 249-50 (1989). Indiana's personal in-
jury statute of limitations is two years, *see* IND. CODE ANN.
§ 34-11-2-4 (West 2004), and *Coopwood v. Lake County
Community Development Department*, 932 F.2d 677 (7th
Cir. 1991), so the statute of limitations on the Institute's
§ 1983 action is also two years.

While state law determines the length of the limitations
period, federal law determines the date of accrual of the
cause of action. *Kelly v. City of Chicago*, 4 F.3d 509, 511
(7th Cir. 1993). A claim accrues for § 1983 purposes " 'when
the plaintiff knows or should know that his or her constitu-
tional rights have been violated.' " *Id.* (quoting *Wilson*, 956
F.2d at 740). This inquiry proceeds in two steps. First, the
court must identify the injury. Next, it must determine the

---

[1] The district court also dismissed the Institute's substantive
due process claim as time-barred and further held that since the
Indiana Supreme Court has never recognized an independent cause
of action for damages for violation of the Indiana Constitution, the
Institute had failed to state a claim on those causes of action as
well. The Institute has not appealed these dismissals so we need
not discuss them further.

date on which the plaintiff could have sued for that injury. "That date should coincide with the date the plaintiff 'knows or should have known' that his rights were violated." *Id.*

The Institute contends that it suffered an injury only when it sold the property for which it had sought the variance. In support of this contention, the Institute argues that by selling the property it no longer was able to avail itself of the remedy it won from the Indiana Court of Appeals—namely, a reconsideration of its variance application by the Common Council consistent with due process. If the Institute's argument is correct, it would mean that a person can sue for self-inflicted injuries, a proposition that contradicts the most basic premises of our legal system. If the Institute were alleging that the defendants somehow forced the sale of the building, then that sale might constitute a separate and cognizable injury, but it has made no such allegation.

In the alternative, the Institute argues that it first knew it had suffered an injury and its § 1983 claims only accrued when the Indiana Court of Appeals held that applicants for variances before legislative bodies in Lake and St. Joseph Counties are entitled to the same due process as applicants for similar permits in other counties in the state. Under this reasoning, it was not until the Court of Appeals issued its decision in the certiorari action that the denial of the Institute's variance became an injury in the legal sense.

But the Institute's own actions belie its argument. The Institute clearly believed it had suffered a federal constitutional injury when it sought certiorari review of the denial of its variance application. In that action, the Institute asserted federal due process and equal protection arguments, in addition to invoking the Indiana Constitution and statutes; the Indiana Court of Appeals' decision was grounded on both state and federal due process and equal protections principles. *City of Hobart*, 785 N.E.2d at 248-54.

The Institute thus knew that its constitutional rights had been violated when its use variance application was denied by the Hobart Common Council on February 21, 2001. The two-year statute of limitations therefore expired on February 20, 2003; this action was filed on December 15, 2003, and is time-barred.

The Institute advances an interrelated set of fallback arguments drawing on (and sometimes conflating) the principles of ripeness, exhaustion of remedies, and equitable abstention, all involving an implicit claim that it could not have brought this action earlier, or alternatively, that the statute of limitations was tolled during the pendency of its state court litigation. None of these arguments has merit.

First, the Institute argues that its § 1983 claim is at bottom a claim for the taking of property without just compensation in violation of the Fifth Amendment, and *Williamson County v. Hamilton Bank*, 473 U.S. 172 (1991), holds that plaintiffs asserting takings claims under the Fifth Amendment must first pursue available state remedies before filing in federal court. *See also Greenfield Mills v. Macklin*, 361 F.3d 934, 961 (7th Cir. 2004). The Institute says that the certiorari action it filed in Indiana state court in 2001 *was* its state remedy, so that if it had attempted to file a § 1983 claim in federal court during the two-year period following the denial of the variance, the federal court would have dismissed the claim as premature under *Williamson County* and *Greenfield Mills*.

The flaw in this argument is that this is not a takings case, and if it were, *Williamson County* and *Greenfield Mills* would supply an alternate ground for dismissal, not a basis upon which to toll the statute of limitations. *Williamson County* held that federal courts do not have subject matter jurisdiction over a takings claim unless the property owner has (1) obtained a final decision from the relevant governmental entity regarding the application of the land use reg-

ulations at issue to the property in question, and (2) sought compensation for the taking through the procedures the state has provided for obtaining such compensation, e.g., inverse condemnation.[2] *Williamson County*, 473 U.S. at 186-95; *see also Greenfield Mills*, 361 F.3d at 957-58. We have held that these requirements "appl[y] with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim." *Greenfield Mills*, 361 F.3d at 961.

Here, although the Indiana Court of Appeals ordered the Common Council to conduct a new hearing on the Institute's variance application, the Institute sold the property before the do-over could occur, and never sought compensation for a taking pursuant to state inverse condemnation proce-dures. As a result, the Institute has not and cannot comply with the requirements of *Williamson County*. Accordingly, the Institute does not help itself by attempting to rechar-acterize its claim as one for an unconstitutional taking.

In any event, the complaint does not allege that the defendants' actions amounted to an unconstitutional taking

---

[2] Generally, § 1983 plaintiffs are not required to exhaust state remedies before filing in federal court. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982); *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997) ("[T]here is no general exhaustion requirement for § 1983 plaintiffs."); *see also Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 453 (7th Cir. 2002) ("[T]he additional ripeness requirements of *Williamson County* create a takings claim exception to *Patsy*'s general requirement that exhaustion is not required in § 1983 suits."); *but cf.* MARTIN A. SCHWARTZ, 1B SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 10.2, at 559 (3d ed. 1997) (*Williamson County* is not an exhaustion decision but one founded on the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), which makes a failed state court takings proceeding a component of the federal constitutional claim, citing *Cassettari v. Nevada County*, 824 F.2d 735, 739 (9th Cir. 1987)).

of the Institute's property without just compensation; the Fifth Amendment is nowhere invoked, and the prayer for relief seeks only lost profits for the treatment center the Institute planned to operate on the property, as well as costs, expenses, and attorneys' fees. This is a dispute about the mishandling of the Institute's variance application by municipal officials in Hobart, not an attack on the way that Hobart's land use regulations operate against the Institute's property. *Williamson County* and *Greenfield Mills* are of no assistance to the Institute here.

In a similar vein, the Institute cites our decision in *River Park, Inc. v. City of Highland Park*, 23 F.3d 164 (7th Cir. 1994), for the proposition that in a zoning-related case such as this one, a § 1983 plaintiff is required to exhaust state court remedies before filing its § 1983 claim. The plaintiff in *River Park* was aggrieved by a denial of its request for rezoning. *Id.* at 165. We concluded that because the federal constitution guarantees only "scant process" in such cases, the *River Park* plaintiff, who was provided with "ample means" under state law to contest the denial of rezoning, "must repair to state court" for a remedy. *Id.* at 167. The Institute misreads *River Park* as an exhaustion case. We explicitly said in *River Park* that we were affirming the dismissal of the property owner's case "not because the owner must 'exhaust' state remedies," but rather because "in zoning cases . . . the only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts." *Id. River Park* has nothing to do with exhaustion of remedies, but is a decision on the merits of the plaintiff's claim.

As an additional alternative argument, the Institute asserts that if it had come to federal court before the Indiana litigation ran its course, the court would have abstained from exercising jurisdiction under the doctrine set forth in *Burford v. Sun Oil*, 319 U.S. 315 (1943), and known colloquially as "*Burford* abstention." *Burford* provides that a

federal court should abstain from exercising jurisdiction when the case before it presents " 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar' " or where the " 'exercise of federal review of the question in a case . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

According to the Institute's *Burford* argument, the question of due process in variance proceedings before the Hobart Common Council was a "difficult question of state law," the federal answer to which could disrupt Indiana's efforts to establish a "coherent policy" with respect to land use. The Institute now says it did not bring its § 1983 claim to federal court earlier because the federal court would have abstained from deciding it anyway. The Institute has saved the federal courts some unnecessary time and effort (so the argument goes); it now wants credit in the form of a roughly two-year tolling of the statute of limitations.

This argument, though creative, is entirely hypothetical. For one thing, the Institute never did go to federal court with its § 1983 claim while the state action was pending, so we cannot say whether that court would have abstained from exercising its jurisdiction under *Burford*. Though in a given case we might decide as a matter of law that a district court erred in failing to abstain from exercising its jurisdiction, we can hardly make that determination in a case that was never even brought. Tolling is an equitable doctrine reviewed for abuse of discretion, *Hondo v. Sterling*, 21 F.3d at 781, making the Institute's hypothetical, after-the-fact argument even more strained.

But more importantly, the precise problem here is not whether the Institute could have gone to *federal* court with

its § 1983 claim before the limitations period expired. The problem is that the Institute failed to go to *any* court with the claim before the limitations period expired. State courts have jurisdiction over § 1983 claims. *See Hondo*, 21 F.3d at 779 ("state courts have 'concurrent jurisdiction to enforce rights created by a federal statute,' such as § 1983" (quoting *Colvin v. Bowen*, 399 N.E.2d 835, 837 (Ind. Ct. App. 1980))). Indeed, this case was initiated in state court. The Institute has not identified any reason why it could not have commenced this action in Indiana state court within the two-year limitations period. Although the abstention argument might have traction in response to a defendant's motion to remove to federal court in another scenario, the expiration of the statute of limitations has mooted that argument here.

As the district court correctly recognized, only traditional tolling principles could save the Institute's claim, and none are applicable. In § 1983 actions tolling of the statute of limitations is governed by the forum state's tolling rules, unless those rules are inconsistent with the purposes underlying 42 U.S.C. § 1983. *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980); *Wilson*, 471 U.S. at 269 ("[T]he length of the limitations period, and closely related questions of tolling and application, are to be governed by state law."). Under Indiana law, statutes of limitation may be tolled due to legal disability, incompetence, minority, imprisonment, nonresidency under certain circumstances, war, death in certain instances, and fraudulent concealment. IND. CODE ANN. §§ 34-11-4-1 to 8-1 (West 2004). The Institute does not claim that any of these circumstances apply to it. Indiana also permits equitable tolling for ordinary statutes of limitation. *See In re Paternity of M.G.S.*, 756 N.E.2d 990, 997 (Ind. Ct. App. 2001). The doctrine authorizes a court to toll a statute of limitations for plaintiffs "who, because of 'disability, irremediable lack of information, or other circumstances beyond [their] control just cannot reasonably be expected to sue in time.'" *Hoosier*

*Bancorp of Ind., Inc. v. Rasmussen*, 90 F.3d 180, 183 (7th Cir. 1996) (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)). Again, the Institute has not asserted that any of these circumstances apply in this case. In short, there are no grounds on which to toll the applicable two-year statute of limitations in this case.

The Institute's claims under § 1983 are barred by the two-year statute of limitations. The decision of the district court is AFFIRMED.

A true Copy:

       Teste:

                     _____

                    *Clerk of the United States Court of Appeals for the Seventh Circuit*