OPINION OF THE COURT
NYGAARD, Circuit Judge.
This appeal raises issues of some complexity concerning the timeliness of an action brought under the Federal Tort Claims Act and various other state statutes. Vicki Miller, the sister of a mentally retarded man and administratrix of his estate, filed a lawsuit sounding in tort against her brother’s physicians and the medical/geriatric facility that provided her brother’s care. Specifically, she filed both a survival claim of negligence and a wrongful death claim under the Federal Tort Claims Act arguing that her brother died because his doctors administered a combination of psychiatric drugs to the point of toxicity, and then failed to diagnose the extent of the toxicity before it became irreversible and terminal. The District Court granted summary judgment, dismissing the claims as untimely. Miller filed a timely appeal and has assigned numerous errors. We will reverse.
I.
The facts surrounding this appeal require a rather detailed recitation. Decedent Henry Miller was born severely retarded. Although he reached a chronological age of sixty-four, his mental age remained that of a four year old child. Despite this severe impairment, no one was ever appointed his legal guardian. See District Ct. Op., at 9. In 1988, he was placed in a Community Living Arrangement through Jewish Educational and Vocational Services. While at JEVS, Dr. Philip Markowitz provided the decedent with psychiatric treatment, including the prescription of *269 psychiatric medications, primarily a combination of Lithium and Haldol. From June 16, 1994 though September 22, 1995, Dr. Carlos Moreno was the decedent’s primary physician. During this period Moreno monitored the decedent’s blood levels and reported abnormal Lithium levels to the medical coordinator at the JEVS home. Moreno did not prescribe any medication for the decedent.
In October 1995, the decedent was admitted to Frankford Hospital. While hospitalized, the attending physician repeatedly advised Miller that her brother’s condition was caused by an adverse reaction to the combination of medication that had been prescribed at the JEVS home by Markowitz. On November 27, 1995, the decedent was transferred to the Philadelphia Geriatric Center, where Dr. Charles Bongiorno was his attending physician. While at PGC, the decedent’s condition deteriorated rapidly. He developed a continuous fever, the cause of which was never diagnosed. On September 9, 1997, after his condition became unstable, the decedent was transferred from PGC to Temple University Hospital. He, died on September 24, 1997. The cause of death was listed as sepsis.
On September 21, 1999, Miller commenced legal action against the Philadelphia Geriatric Center, Bongiorno, Markow-itz and Moreno by filing a praecipe for a writ of summons in the Court of Common of Philadelphia County. Her complaint was filed on March 1, 2000. Moreno was an employee of Greater Philadelphia Health Action Inc., a federally funded health center. Because the GPHA. is a grantee of the federal Department of Health and Human Services, its employees are considered employees of the Public Health Service, a federal agency. Federal jurisdiction existed, therefore, under the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 1346. The matter was removed to the United States District Court for the Eastern District of Pennsylvania. The United States was subsequently properly substituted for Moreno as a party to this litigation. On October 20, 2000 the District Court dismissed Miller’s claims against the United States without prejudice because she failed to exhaust the available administrative remedies. The remaining claims were later remanded to state court.
Miller then filed an administrative' claim with the United States Department of Health and Human Service on December 12, 2000. Not having received a decision from the Department after waiting more than six months, Miller filed an action in the District Court on October 24, 2001 in which she named the United States as a defendant pursuant to the FTCA. On February 26, 2002, Markowitz filed an answer and cross-claim against Moreno in the remanded state court action, and the state court claims were removed to the District Court and consolidated with her newly filed federal court action.[2]
*270 The Government moved for summary-judgment, arguing that Miller’s claims were barred by the FTCA’s two-year statute of limitations. The Government alleged that the decedent became aware of his injury and its probable cause on October 31,1995. This date reflects a period in which the decedent was admitted to Frankford Hospital with possible acute rhabdomyolyosis, a serious disease characterized by muscle breakdown. Miller argues that the date from which the statute of limitations should be calculated is September 24, 1997 — the date of decedent’s death. Miller appeals from two orders of the District Court which disposed of her claims against Appellees Markowitz and the United States. The first order granted summary judgment in favor of Appellee the United States, holding that Miller failed to present her claims against the United States to the Department of Health and Human Services within the two year statute of limitations period outlined in the FTCA. See 28 U.S.C. § 2401(b). In the second order, the District Court entered judgment in favor of Appellee Markowitz based on Pennsylvania’s statute of limitations.[3]
II.
As our late colleague Judge Max Rosenn aptly noted in Hughes v. United States, 263 F.3d 272, 273 (3d Cir.2001), “determining when the statute of limitations begins to run in a case is sometimes difficult, especially in cases claiming medical malpractice.” This is particularly so where, as here, Miller brings both survival and wrongful death claims under the FTCA as well as survival and wrongful death claims pursuant to Pennsylvania law all based on the alleged medical malpractice of the ap-pellees. We turn first to the FTCA claims.
A. The Federal Tort Claims Act
Under the FTCA, a claim against the United States is barred unless it is presented to the appropriate federal agency “within two years after such claim accrues.” 28 U.S.C. § 2401(b). The determination of when a claim accrues for the purposes of the FTCA is a question of federal law. Tyminski v. United States, 481 F.2d 257, 262-63 (3d Cir.1973). The District Court’s factual findings regarding the date on which Miller’s claims accrued will remain undisturbed unless its findings are clearly erroneous. Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). Our review is plenary, however, where the District Court’s determinations involve the application and interpretation of legal precepts. D & G Equip. Co. v. First Nat’l Bank, 764 F.2d 950, 954 (3d Cir.1985).
The FTCA is a limited waiver of the sovereign immunity of the United States. The Supreme Court has admonished that the courts should carefully construe the time limitations of the FTCA so as not to extend that limited waiver beyond that which Congress intended. United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 356-57, 62 L.Ed.2d 259 *271 (1979). Normally, a tort claim accrues at the time of injury. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir.2002). However, in Kubrick, the Supreme Court carved out a “discovery rule” exception for FTCA claims involving medical malpractice. Kubrick, 444 U.S. at 111, 100 S.Ct. 352. Such claims, therefore, accrue not at the time of injury, but rather when a plaintiff knows of both the existence and the cause of his injury. Id. at 119-122, 100 S.Ct. 352. Importantly, however, accrual does not await the point at which a plaintiff also knows that the acts inflicting the injury may constitute medical malpractice. Id. at 122,100 S.Ct. 352.
B. FTCA Wrongful Death Claims
Before calculating the time limitations for Miller’s federal claims, we must first address an issue she has raised concerning the actual characterization of her claims. In her brief, she argues that the District Court failed to recognize that she was bringing both survival and wrongful death claims, presumably in her capacity as the administratrix of her brother’s estate. She argues that the majority of the District Court’s discussion of the FTCA claims focused on negligence. See e.g., District Ct. Op. at 8 (“Therefore, the cause of action against the United States alleging the negligence of Moreno, accrued at the latest by December 1995 ... ”).
In determining whether a wrongful death claim is distinct from a survival claim, we look to state law. Miller v. United States, 932 F.2d 301, 303 (4th Cir.1991) (“[Sjtate law determines whether there is an underlying cause of action; but federal law defines the limitations period and determines when that cause of action accrued.”); see also Chomic v. United States, 377 F.3d 607, 611 (6th Cir.2004). The wrongful death action is distinct from a survival action under Pennsylvania law. 42 PA. CONS. STAT. Section 8302.[4] Pennsylvania law creates an “independent” cause of action for wrongful death. 42 PA. CONS. STAT. Section 8301. An “independent” wrongful death action is one which is created for the benefit of and is held by statutorily specified survivors and is intended to compensate them for the pecuniary loss suffered because of the decedent’s death. Put another way, the action remedies the loss sustained by the survivors who are deprived of the decedent’s earnings, companionship, etc.[5] We agree that the District Court’s opinion does appear to conflate Miller’s claims. Miller pleaded “negligence” — nothing more specific than that. However, while she has not clearly delineated her claims, she is correct in *272 pointing out that the federal rules of pleading require only that a plaintiff set forth a “short and plain statement” of his claim for relief. Fed.R.Civ.P. 8(a)(2). Moreover, under the rules, “(a)ll pleadings ... (are to) be so construed as to do substantial justice.” Fed.R.Civ.P. 8(f). Pleadings need not be construed most strongly against the pleader, rather we should make a determined effort to understand what she is attempting to set forth.
The complaints filed in this matter demonstrate that Miller was indeed alleging a wrongful death claim in addition to her survival action. For example, her complaint naming the United States as a defendant alleges that the defendant’s actions “caused the decedent to endure pain and suffering and contributed to the cause of his untimely death.” Plaintiffs complaint at 4, ¶ 20. Further, her “Claim for Damage, Injury, or Death” filed with the United States Department of Health and Human Services indicates that she “seeks compensation and damages related to the death of Henry Miller.” App. at 69a. The letter from counsel accompanying the filing of this form additionally makes it clear that Miller was making a wrongful death claim (“we are submitting this wrongful death claim ... ”). App. at 71a. Having determined that Miller has pleaded a separate wrongful death action under the FTCA, we now must determine if that claim is timely.
As noted earlier, the accrual date for wrongful death claims brought under the FTCA is determined under federal law. See e.g. Miller, 932 F.2d at 303; Chomic, 377 F.3d at 611. Where a state statute creates such an independent cause of action, it cannot accrue for FTCA purposes until the date of death, which gives rise to the underlying action. Fisk v. United States, 657 F.2d 167, 171 (7th Cir.1981) (holding that while state law created the wrongful death cause of action, the accrual question was one of federal law); see also Warrum v. United States, 427 F.3d 1048, 1052 (2005) (re-affirming that for purposes of the FTCA, because Indiana law creates a wrongful death claim substantively independent of the personal injury claim possessed by the decedent before death, the wrongful death claim cannot accrue until the date of the decedent’s death).
We now join those circuits that have concluded, albeit under a wide variety of factual scenarios, that wrongful death claims, for FTCA purposes, cannot accrue prior to death. See e.g., Warrum, 427 F.3d at 1051; Johnston v. United States, 85 F.3d 217 (5th Cir.1996); Washington v. United States, 769 F.2d 1436 (9th Cir., 1985); Fisk, 657 F.2d at 167. Here, Henry Miller died on September 24, 1997, and his sister filed her wrongful death action against the United States on September 21, 1999. Because Miller brought her wrongful death action within two years of the decedent’s death, her claims are timely.
C. FTCA Survivor Claims
Miller further claims that the District Court erred by holding her survival claims against the United States and Markowitz to be time barred. These claims were also brought under the Federal Tort Claims Act. See 42 U.S.G. § 2401(b).
The same two dates are once again at issue here: October 31, 1995 — the date when the doctors at the Franklin Hospital informed Miller of the cause of her brother’s health problems, and September 24, 1997, the date of his death. Miller again argues that the statute of limitations begins to run on the date of her brother’s death. The Government asserts that the claims accrued when Miller knew of both the existence and the cause of Henry’s injury, October 31, 1995. Relying on this *273 date would render Miller’s claims time-barred. If the date of accrual is the date of the decedent’s death, however, Miller’s claims are timely. The District Court concluded that October 31, 1995 was the date the claims accrued because it was on this date that Miller knew both the cause and existence of her brother’s illness. Miller argues that the District Court erred by looking to her rather than to the decedent as the proper person to whom the reasonable person standard of the FTCA discovery rule applies. We agree.
The record is quite clear that, although Miller closely monitored her brother’s health and treatment, she was not his legal guardian. Even though she was not his legal guardian, the District Court nonetheless looked to Miller to determine when any lawsuit should have been filed. This was error. Miller would not have had.the authority to file a suit on the decedent’s behalf while he was alive unless she was appointed his guardian. Hence, the District Court’s discussion of what Miller knew or what a reasonable person with Miller’s knowledge should have known is irrelevant to a determination of when the statute of limitations ran.
We are left to look at what the decedent Henry Miller knew or what a reasonable person with the decedent’s knowledge should have known. But this is problematic. As noted earlier, the decedent was mentally impaired, with the approximate mental age of a four year old child. In deciding not to look to Henry’s knowledge, the District Court recognized the difficulty presented:
Admittedly, for purposes of determining the date upon which the statute of limitations commences in a survival action, one inquiry is when the decedent became aware of his injury and its cause. Although it is unclear what decedent was specifically told about his injury and it is clear that someone suffering from mental retardation to the extent that he was would be unable to comprehend whatever he was told about his injury and its cause
District Ct. Op. at 8 (citing Barren v. United States, 839 F.2d 987 (3rd Cir.1988)).
On first blush it would seem that, as Kubrick instructs, we should apply the objective reasonable person standard to Henry Miller to determine when he should have known of his injury. See Kubrick, 444 U.S. at 111, 100 S.Ct. at 360. In Kubrick, the Supreme Court made no exception to the discovery rule for persons suffering from a mental illness and so it would seem that it should control here. However, Kubrick is not absolute in its application. A consistent but narrow exception to the Kubrick rule has been carved out by a number of courts of appeal for situations in which the plaintiff has no culpability in failing to bring a timely claim. See Clifford by Clifford v. United States, 738 F.2d 977 (8th Cir., 1984); Washington v. United States, 769 F.2d 1436 (9th Cir.1985). After all, the Court in Kubrick was clearly concerned with the plaintiff who “armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community.” Kubrick, 444 U.S. at 123, 100 S.Ct. at 360. The objective standard the Court adopted sought to enforce this maxim.
In Barren, over a vigorous dissent, we applied the Kubrick objective standard, refusing to carve out any exception for a plaintiff whose ability to perceive that the government injured him was destroyed by the government’s own actions. The plaintiff in Barren was initially competent, although he suffered from serious mental illness, but he was rendered completely *274 incompetent through the government’s malfeasance in attempting to treat his mental conditions. In applying the Kubrick objective standard to the plaintiff, we noted that allowing persons with mental illnesses to file suit later than the objectively reasonable person would be “tantamount to ruling that a plaintiffs mental infirmity can extend the statute of limitations,” and that “[s]uch extensions have been uniformly rejected by this and other courts of appeals.” Barren, 839 F.2d at 992. We also refused to consider the effect of a delay in the appointment of a guardian, stating that “[tjhere is no reason why such a delay in the appointment of a guardian should work to the detriment of the Government.” Id. at 991 n. 7.
Our reluctance in Barren to allow the plaintiff an exception to the Kubrick objective standard stemmed from the concern that plaintiffs who were injured by the government could then attempt to take advantage of the “exception” by arguing about when they became incompetent. In other words, the court did not want disputes over when a plaintiff became incompetent to overtake or subsume the objective reasonable person standard in Kubrick — especially when the Government was the cause of the injury that led to the incompetency. Barren, 839 F.2d at 991. Additionally, we refused to address the effect of a lack of a guardian for fear that “[a] deliberate delay” in appointing one might also encourage extending the statute of limitations to the government’s detriment.
However, on its facts, Barren addresses only the specific class of plaintiffs who were not only injured by the government, but were also prevented from recognizing their injuries by the government’s malfeasance and we do not find its logic controlling here. Miller’s incapacity was not caused by the Government’s malfeasance. Instead, he was born totally incompetent and remained so his entire life. Consequently, the concerns suggested in Barren are simply not implicated here. The Government did not cause Miller’s retardation, although they did injure him. Thus, because Miller’s mental retardation predated the government’s negligence, there can be no concern that finding Kubrick inapplicable here will encourage disputes over when a plaintiff was rendered incompetent. Nor might it facilitate the intentional delay in appointing a guardian because, again, plaintiffs in Miller’s position are incompetent before the government’s negligence occurs.
To reiterate, we are not dealing with a person who, like in Barren, was mentally ill but competent and then, because of the government’s malpractice, progressed into total mental incapacity. Henry Miller, from his birth to his death, possessed the intellectual ability of a four year old. His profound disability predating the government’s malfeasance places him outside the purview of Barren and into somewhat uncharted waters. Analogous to Henry Miller’s position, and instructive for the resolution of this case, we believe that his position most closely resembles a plaintiff who is a legal minor.
For minors, it is of course true that in most situations the Kubrick objective standard unequivocally applies. See Crawford v. United States, 796 F.2d 924 (7th Cir.1986). But, minors are not subject to the Kubrick objective standard because they are thought to be capable of recognizing their injury and thus should be held responsible for investigating its cause, which is the justification that underlies Kubrick. Rather, minors are subject to Kubrick’s standard because we look to their parent or legal guardian. That is, we impute to their parents or guardian the knowledge of their injury. We do this precisely because *275 a legal minor is not in a position to either understand her injuries or even to bring a claim if she wanted to. It follows that, in the rare instance where a minor did not have either a parent or a guardian, the Kubrick standard should not be applied to them because there would be no one to whom we could impute knowledge and, also because the minor herself could not have understood, let alone brought, the claim. Here, we are essentially dealing with a minor — an individual who is so severely mentally incapacitated that his intelligence equates to that of a four-year-old child. Moreover, this “minor” lacked an appropriate legal guardian. Accordingly, we will not apply the Kubrick objective standard to this plaintiff.
Having determined that Kubrick’s standard does not apply, we now turn to a determination of when the claims accrued. We find instructive a class of cases — the coma cases — identified by Judge Becker in his dissenting opinion in Barren. For example, in Clifford v. United States, the Court of Appeals for the Eighth Circuit held that the statute of limitations accrued when Clifford’s father was appointed his guardian and not, as the government had argued, when Clifford fell into a coma. Clifford, 738 F.2d 977. Specifically, the court held that because Clifford had reached the age of majority, and had not yet had a guardian appointed on his behalf, the knowledge of his family members could not be imputed to the plaintiff himself. See Barren, 839 F.2d at 997 (citing Clifford, 738 F.2d at 980).
Also citing Clifford, the Court of Appeals for the Ninth Circuit, in Washington v. United States, held that a cause of action accrued on the date when a comatose patient died, not on the date she entered into a fourteen-year coma. Washington, 769 F.2d at 1439. The court reasoned that because the plaintiff was never aware of her injury or its cause, the statute of limitations began to run on the date of her death. Id. at 1438. Further, the court found the knowledge of the plaintiffs husband irrelevant to her ability to file suit. Id.
Henry Miller presents a legal situation akin to those plaintiffs in Clifford and Washington. Not only was no guardian ever appointed for him, his profound mental retardation prevented him from any awareness of, his injury or its cause. The objective reasonable person inquiry annun-ciated by the Supreme Court in Kubrick does not apply here. Assuredly, had Vicki Miller been appointed legal guardian for her brother at some time before the government’s alleged malpractice, Kubrick would most likely apply. Admittedly, Henry Miller’s legal position is a unique one, and our holding in this appeal is narrow as a result. However, we are certainly not alone among those courts which have carved a narrow equitable exception to Kubrick’s reasonable person standard for mentally incapacitated persons who, for whatever reason, do not have a legally appointed guardian to act in their stead. See Clifford, 738 F.2d at 977; Washington, 769 F.2d at 1439; Zeidler v. United States, 601 F.2d 527 (10th Cir.1979). We will therefore reverse the grant of summary judgment on Miller’s FTCA survival claims.
III.
Miller also brings, survival and wrongful death claims under Pennsylvania law. She again asserts that the statute of limitations for the state law survival claim against Dr. Markowitz did not begin to run until the decedent’s death. She also asserts that there were genuine issues as to when the statute of limitations began to run. We agree that there are genuine issues of material fact as to when Miller’s *276 state law survival claims against Markow-itz accrued.
Under the Pennsylvania discovery rule, the statute of limitations begins to run when the complaining party “knows, or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party’s conduct.” Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir.1991). A plaintiff need not know the exact medical cause of the injury, that his injury is due to another’s negligent conduct or that he has a cause of action. Id. at 925. The “polestar” of the discovery rule is not the plaintiffs actual knowledge, but rather “whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff.” Id. (citing O’Brien v. Eli Lilly & Co., 668 F.2d 704, 711 (3d Cir.1981)); see also Vitalo v. Cabot Corp., 399 F.3d 536, 545 (3d Cir.2005) (reiterating that plaintiffs must exercise reasonable diligence to invoke the “safe harbor” of the discovery rule).
Consequently, Pennsylvania’s discovery rule is objective. Statutes of limitations are generally strictly construed because their exclusive purpose is to expedite litigation and discourage stale claims so the defendant will not be prejudiced by having to locate evidence and witnesses to defend a long-passed wrong. Gustine Uniontown Assocs. v. Anthony Crane Rental, Inc., 577 Pa. 14, 842 A.2d 334, 346 (2004). Because the discovery rule tolls the otherwise strict application of the statute of limitations, diligence is evaluated under the reasonable person standard. It matters not what the particular plaintiff actually knew, but what he reasonably should have known. Until recently, no adjustments to this objective analysis were made for mental illness. See Lake v. Arnold, 232 F.3d 360, 371 (3d Cir.2000) (citing Walker v. Mummert, 394 Pa. 146, 146 A.2d 289, 291 (1958)); Pearce v. Salvation Army, 449 Pa.Super. 654, 674 A.2d 1123, 1126 (1996). However, under a recent Pennsylvania Supreme Court decision, “[w]hile reasonable diligence is an objective test, it is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.” Fine v. Checcio, 582 Pa. 253, 870 A.2d 850, 858 (2005) (citing Crouse v. Cyclops Indus., 560 Pa. 394, 745 A.2d 606, 611 (2000) (internal citations omitted)). “Under this test, a party’s actions are evaluated to determine whether he exhibited ‘those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.’ ” Id.
Whether a damaged party, exercising reasonable diligence, could ascertain that he has been injured, and by what cause, is a factual determination. As discussed earlier, the decedent’s knowledge is relevant for the survival claim because it is his claim that survives his death brought by his personal representative due to his decease. Carroll v. Avallone, 869 A.2d 522, 528 (2005) (citing Kiser v. Schulte, 538 Pa. 219, 648 A.2d 1 (1994)). We believe that because the decedent had the mental age of a four-year-old, this is a “difference between persons” that must be taken into account under Fine v. Checcio, 582 Pa. 253, 870 A.2d 850, 858 (2005), to determine whether the decedent knew, or, more accurately, was even capable of knowing, that he was injured and the cause of his injury. Because this presents a genuine issue of a material fact, we will reverse the grant of summary judgment on Miller’s state law survival claim.
Miller also asserts that the District Court erred by failing to recognize the state law wrongful death component of her claims. We agree. Generally, the right of action for wrongful death shall *277 exist only for the benefit of the spouse, children, or parents of the deceased. See 42 PA. CONS. STAT. § 8301(b). However, a wrongful death action may also be brought by the personal representative of a decedent to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death. See 42 PA. CONS. STAT. § 8301(d). Hence, Miller, as administra-trix of her brother’s estate, is a proper party to bring this claim. Carroll v. Aval-lone, 869 A.2d 522, 528 (Pa.Super.Ct.2005) (citing Commonwealth v. Opperman, 780 A.2d 714 (2001)).
The decedent’s wrongful death actions accrued on September 24,1997, the date of his death. See Gallick v. United States, 542 F.Supp. 188, 191 (1982). It is undisputed that the statute of limitations is two years for wrongful death actions. 42 PA. CONS. STAT. § 5524(2). Therefore, Miller’s wrongful death claims filed on September 21,1999 were timely. Accordingly, we will reverse the grant of summary judgment on Miller’s wrongful death claims.
IV.
The Judgment of the District Court is reversed and this matter is remanded for further proceedings consistent with this opinion.

. Henry Miller died on September 24, 1997, and Vicky Miller filed her suit on September 21, 1999, within the limitations period. The United States was substituted for Dr. Carlos Moreno for the FTCA claims pursuant to 28 U.S.C. § 2679 which governs suits against federal employees acting in the scope of their employment. The District Court then dismissed Miller's case for failure to exhaust her administrative remedies on October 20, 2000. Under 28 U.S.C. §§ 2679(5)(A) and (B), whenever the United States is substituted as the defendant under this section and the action is dismissed for failure to first present the claim to the appropriate federal agency, the claim is deemed timely under 28 U.S.C. § 2401(b) "if the claim would have been timely had it been filed on the date the underlying civil action was commenced and the claim is presented to the appropriate Federal agency within 60 *270 days after the dismissal of the civil action.” Id. Miller filed her administrative claim with the Department of Health and Human Services on December 12, 2000, within the 60 day statutory requirement. See 28 U.S.C. § 2679(5)(B). Therefore, after failing to get a response from the agency, her suit against the United States, refiled on October 24, 2001, was treated as if it was filed on September 21, 1999.

. After a jury trial, the District Court entered summary judgment in favor of defendants Philadelphia Geriatric Center and Bongiorno. Miller did not appeal from this order and, as such, Philadelphia Geriatric Center and Bon-giorno are not parties to this appeal.

. A survival action is a continuation of the personal injury action held by the decedent at the time of his or her death and may be brought by the personal representative of their estate. See Moyer v. Rubright, 438 Pa.Super. 154, 651 A.2d 1139, 1140 (1994); Pastierik v. Duquesne Light Co., 514 Pa. 517, 526 A.2d 323, 326 (1987).

. A wrongful death action under Pennsylvania law does have a distinct curiosity to it. While technically an independent cause of action,Pennsylvania wrongful death actions are, in some sense, derivative. While not derivative of the decedent's personal injury action, such causes of action have been deemed derivative of the original tort which resulted in injury and eventual death. Therefore, if, on the date of the decedent’s death, the statute of limitations had run on the underlying tort, his survivors are barred from bringing a wrongful death claim. See Moyer v. Rubright, 438 Pa.Super. 154, 651 A.2d 1139, 1142-43 (1994); Baumgart v. Keene Bldg. Prod. Corp., 430 Pa.Super. 162, 633 A.2d 1189 (1993); Ingenito v. AC & S Inc., 430 Pa.Super. 129, 633 A.2d 1172, 1176 (1993); Anthony v. Koppers, 496 Pa. 119, 436 A.2d 181, 185 (1981). However, if the survivors can bring a wrongful death claim, the statute of limitations begins to run on the date they sustain the pecuniary loss, i.e., the date of the decedent's death. Moyer, 651 A.2d at 1142.