In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1329

PETRA PRESBYTERIAN CHURCH,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF NORTHBROOK,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 1936—**Blanche M. Manning**, *Judge*.

———————

ARGUED OCTOBER 18, 2006—DECIDED JUNE 7, 2007

———————

Before POSNER, EVANS, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. This suit, filed in federal district court by Petra, a Presbyterian church that caters to Korean-Americans, charges the Village of Northbrook, a suburb of Chicago, with violating the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq*. So far as relates to this case, the Act (RLUIPA) forbids a local government to "impose or implement a land use regulation in a manner that" either "imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden"

is pursuant to "a compelling governmental interest," or "treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." *Id.*, §§ 2000cc(a)(1), (b)(1). "[R]eligious exercise" is defined to include the "use, building, or conversion of real property for the purpose of religious exercise." § 2000cc-5(7)(B). The district court granted summary judgment in favor of the Village. 409 F. Supp. 2d 1001 (N.D. Ill. 2006).

In the spring of 2000, Petra discovered a property in Northbrook containing a warehouse that it wanted to convert to a church and an office building that it wanted to use for classrooms. But the property was located in a part of Northbrook that under the Village's then zoning ordinance (adopted in 1988) was zoned industrial. Membership organizations, such as community centers, youth centers, fraternal associations, and political clubs were permitted in the zone, but not churches unless the Village's board of trustees was persuaded first to rezone the property to "institutional buildings" (the only zone in which churches are permitted) and then to issue a special permit allowing a church in the rezoned property. Of the eleven applications for rezoning and permits under the 1988 ordinance made by churches, Petra's was the only one not granted.

In September of 2000, when Petra had not yet bought the property that it had its eye on, it submitted an informal request for rezoning and for a permit to the Village's board of trustees. The board conducted a preliminary review on the basis of which it made comments favorable to the proposal, but without ruling on it. Petra then signed a contract to purchase the property (for $2.9 million) but made the purchase contingent on its being permitted to use the warehouse as a church. Petra also filed

a formal application with the board for the necessary rezoning and permit. At a hearing on the application conducted by the Village's planning commission, which advises the board of trustees on land-use matters, land-owners in the industrial zone expressed opposition, and the commission recommended that Petra's application be denied. Without taking a formal vote, the board of trustees directed its staff "to prepare documents that would be consistent with denial of" Petra's application. Fearing the preclusive effect of a formal denial, Petra withdrew its application. But then, remarkably, it went ahead and bought the warehouse, albeit at a reduced price of $2.6 million, and began using it as a church.

RLUIPA had been enacted in 2000, and it caused the Village fathers to become concerned that the Village's 1988 zoning ordinance, by treating religious organizations less favorably than other membership organizations, might violate the "less than equal terms" provision of the new statute. The following year the board began a legislative process that resulted in the adoption of a revised ordinance in 2003 that banned all membership organizations (not just churches) from the industrial zone. Existing organizations were grandfathered, but of course not Petra, which had never received permission to operate a church in the zone.

Shortly after the enactment of the new ordinance, the Village sought an injunction in state court against Petra. But it based its claim not on Petra's violating the zoning code but on Petra's violating the Village's building code. Maybe the board of trustees was skittish about relying on an ordinance that might be challenged successfully under RLUIPA—Petra had already filed the present suit, which initially challenged just the 1988 ordinance.

The state court issued a preliminary injunction prohibiting Petra from "using the indoor premises [of the property] for assembly purposes" or "occupying the indoor premises of the property in numbers exceeding 60 persons total at one time limited to general business purposes for meetings, classes, choir practice, office and business use, and washroom use." The district judge interpreted the injunction as "prevent[ing] Petra from conducting worship services and limiting occupancy to 60 persons at all other times." The preliminary injunction was issued in 2003, and the following year the state court issued a permanent injunction to the same effect.

Petra's main argument is that it acquired a "vested right" to operate its warehouse as a church. A doctrine of Illinois law allows in some circumstances a land use to continue after a zoning change that would ban it, e.g., *1350 Lake Shore Associates v. Healey*, 861 N.E.2d 944, 950 (Ill. 2006), but only if the use was authorized by the zoning ordinance as it stood before the change. E.g., *id.*; *City of Elgin v. All Nations Worship Center*, 860 N.E.2d 853, 856-58 (Ill. App. 2006), *National Advertising Co. v. Village of Downers Grove*, 561 N.E.2d 1300, 1304-05 (Ill. App. 1990). And that is not the case here. Anyway, no claim under state law is before us. The district court relinquished supplemental jurisdiction over Petra's Illinois "vested rights" claim. Petra argues that that was error, that though a state law claim it arises under federal law. The argument makes no sense. The judge did Petra a favor by relinquishing jurisdiction over the state law claim, because if it were before us we would reject it on the merits, as a misreading of Illinois law.

Petra argues in the alternative for a federal "vested rights" doctrine on the basis of various provisions of the

Constitution, and on RLUIPA. The argument, peppered with mysterious references to a "federal zoning law," is difficult to follow. As near as we can understand it, Petra is claiming that when it bought the property it was reasonably relying on the invalidity of the 1988 ordinance, which arbitrarily treated religious membership organizations worse than other membership organizations, thus violating not only RLUIPA but also the free-exercise clause of the First Amendment. E.g., *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532-34 (1993). (The "less than equal terms" provision of RLUIPA codifies that constitutional prohibition. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1232 (11th Cir. 2004).) As a result of that reliance, Petra contends that it obtained an indefeasible right to use the warehouse for a church even if the 2003 ordinance, which would forbid such use, is valid.

We cannot find any basis, whether in cases or other conventional sources of law, or in good sense, for the proposition that the federal Constitution forbids a state that has prevented a use of property by means of an invalid (even an unconstitutional) enactment to continue to prevent that use by means of a valid one. From the proposition that the Village should not have discriminated in the industrial zone in favor of secular membership organizations it does not follow that when it eliminated the discrimination by banning all membership organizations from the zone, this entitled the victim of the discrimination to claim, by way of remedy, discrimination in *its* favor. So strange a rule of estoppel could hardly be thought an imperative of due process, especially since, although property rights are protected (to a degree) by the due process clauses of the Constitution, the scope of those

rights is determined by state law within broad limits that include the conditions under which a governmental act can render a property right indefeasible. *Crown Media, L.L.C. v. Gwinnett County*, 380 F.3d 1317, 1325 and n. 18 (11th Cir. 2004); *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1333 (11th Cir. 2004); *Lakeview Development Corp. v. City of South Lake Tahoe*, 915 F.2d 1290, 1294-95 (9th Cir. 1990).

And if there were such a rule of constitutional law ("vesting by estoppel"), it would be inapplicable to this case. If the 1988 ordinance violated RLUIPA, as Northbrook comes close to conceding, Petra didn't have to comply with it. But that doesn't mean that it acquired an immunity from *all* zoning regulation. It knew or should have known that Northbrook could redo its ordinance to comply with the "less than equal terms" provision of RLUIPA in one of two ways: by permitting religious organizations in the industrial zone, or by forbidding all membership organizations in the zone. Petra could not reasonably assume that the Village would choose the first option. And since it therefore did not *reasonably* rely on the illegality of the 1988 ordinance in going ahead and buying the property, but instead assumed the palpable risk that a new, valid ordinance would continue the ban on its desired use of the property, it has no ground for blocking the Village from enforcing the amended ordinance against it, on the theory that the Village pulled the rug out from under it by changing the ordinance.

Petra also seeks damages for the period during which it was enjoined from operating the warehouse as a church. The injunction has become final, and the judgment of a state court cannot be appealed to any federal court other than the Supreme Court. E.g., *Exxon Mobil Corp. v. Saudi*

*Basic Industries Corp.*, 544 U.S. 280, 283-86 (2005); *Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006). If Petra has a claim for damages that is not dependent on invalidating the injunction, it is time barred. Petra filed the present suit in March of 2003. The applicable statute of limitations, the parties agree, is two years, so that to be timely Petra's claim had to arise no earlier than March of 2001. The district court thought it arose in December 2000 because that was when Petra first "knew about the constitutional infirmity" of the 1988 ordinance. 409 F. Supp. 2d at 1006. Petra argues that its claim did not arise until May 2001, when the board signaled unmistakably that it would not grant Petra a special permit by directing its staff to prepare documents consistent with the denial of Petra's application.

The date on which Petra first learned that the 1988 ordinance might violate RLUIPA was not the date on which its claim arose. Mere knowledge of the existence of an invalid law that might be applied to one is not an injury, and a tort claim does not arise until there is an injury, e.g., *Palmer v. Board of Education*, 46 F.3d 682, 685 (7th Cir. 1995); *Diaz v. Shallbetter*, 984 F.2d 850, 855 (7th Cir. 1993), *Miller v. Philadelphia Geriatric Center*, 463 F.3d 266, 271 (3d Cir. 2006), or until the injury (and who caused it) is discovered or should have been discovered. E.g., *id.*; *Behavioral Institute of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); *McIntyre v. United States*, 367 F.3d 38, 51-52 (1st Cir. 2004); *Corcoran v. New York Power Authority*, 202 F.3d 530, 544 (2d Cir. 1999). Indeed, before there is an injury, there is no standing to sue for damages because no damages have accrued, *Love Church v. City of Evanston*, 896 F.2d 1082, 1085-86 (7th Cir. 1990), and obviously a statute of limitations cannot begin to run before the prospective plaintiff could sue.

But December 2000 is when Petra's claim arose, because, as the district judge noted elsewhere in her opinion, that was when Petra entered into the first contract to buy the warehouse. Although the purchase was contingent on Petra's being able to overcome the religious exclusion in the 1988 zoning ordinance, the contingency was a negative consequence of the ordinance because Petra had to pay the seller $300,000 to compensate him for the risk that the deal would fall through and he would have to find another buyer. The $300,000 figure is the difference between the $2.6 million sale price in the second contract, which was not contingent on Petra's obtaining approval to use the property for religious purposes, and the $2.9 million price in the first contract, which was contingent on that approval. If the ordinance was invalid and therefore religious organizations had the same rights in the industrial zone as other membership organizations that, so far as appears, differ from religious ones only in being secular, then were it not for the ordinance Petra would have purchased the property without conditions and begun operating the warehouse as a church without facing an injunction. So its claim did arise more than two years before it sued, and is therefore time-barred.

That leaves Petra's challenge to the current ordinance, which it would like enjoined so that it can at last convert the warehouse to a church. This might seem an exercise in futility, since the injunction based on the building code remains in effect, though Petra could always ask the court that issued it to dissolve or modify it. But it appears that if the zoning ordinance were invalidated, the Village would issue a permit to Petra to retrofit the building to bring it into compliance with the building code, and

that if Petra did that the state court would lift the injunction. So Petra's challenge to the ordinance is not moot.

The new ordinance does not violate the "less than equal terms" provision of RLUIPA. So the question is whether it imposes a substantial burden on the exercise of religious rights by Petra and its flock not offset by a compelling governmental interest. The ban on churches in the industrial zone cannot in itself constitute a substantial burden on religion, because then every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760-62 (7th Cir. 2003); *Midrash Sephardi, Inc. v. Town of Surfside, supra*, 366 F.3d at 1226-28; *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034-35 (9th Cir. 2004); see also *Love Church v. City of Evanston, supra*, 896 F.2d at 1086-87. Religious organizations would be better off if they could build churches anywhere, but denying them so unusual a privilege could not reasonably be thought to impose a substantial burden on them. As we explained in *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900 (7th Cir. 2005), "the 'substantial burden' provision backstops the [Act's] explicit prohibition of religious discrimination . . . . If a land-use decision . . . imposes a substantial burden on religious exercise . . . and the decision maker cannot justify it, the inference arises that hostility to religion, or more likely to a particular sect, influenced the decision." Unless the requirement of substantial burden is taken seriously, the difficulty of proving a compelling governmental interest will free religious organizations from zoning restrictions of any kind.

When there is plenty of land on which religious organizations can build churches (or, as is common nowadays,

convert to churches buildings previously intended for some other use) in a community, the fact that they are not permitted to build everywhere does not create a substantial burden. What is true is that, as in *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, *supra*, once the organization has bought property reasonably expecting to obtain a permit, the denial of the permit may inflict a hardship on it. *Id*. at 898-900. In that case the denial was so utterly groundless as to create an inference of religious discrimination, so that the case could equally have been decided under the "less than equal terms" provision of RLUIPA, which does not require a showing of substantial burden. But Petra had no reasonable expectation of obtaining a permit. Having decided to go ahead and purchase the property outright after it knew that the permit would be denied, Petra assumed the risk of having to sell the property and find an alternative site for its church should the denial be upheld (or, if illegal, legally reimposed), just like any other religious organization that wanted to build in the industrial zone.

Any such organization would have to show that a paucity of other land available for churches made the exclusion from the industrial zone a substantial burden to it. E.g., *San Jose Christian College v. City of Morgan Hill*, *supra*, 360 F.3d at 1034-35. Petra did not attempt to show this. Northbrook concedes that the two residential zones (R-1 and R-2) that are the only zones in which churches are permitted by the new ordinance without a permit are "basically built up," so that to build a church in one of those zones a religious organization would have to buy lots with existing homes and demolish them. But there is no evidence concerning the availability of land in the other zones where churches are allowed to operate with a

permit—other residential zones, commercial zones, office zones, the institutional building zone, and a combined residential/limited-commercial zone—or the difficulty of obtaining a permit for a church in those zones.

The Village argues, unnecessarily and none too persuasively, that it has a compelling interest in keeping religious organizations, along with other membership organizations, out of the industrial zone, even if a substantial burden on religious observance results. It has an interest, certainly. The industrial zone contains factories and warehouses that generate substantial truck traffic. It has toxic wastes, too—and no sidewalks. The traffic and its associated noise are a source of inconvenience, annoyance, and even danger (especially given the absence of sidewalks) to patrons of membership organizations, including any churchgoers. The industrial users of the zone objected to the grant of a permit to Petra because they are worried about possible tort liability, and also that restrictions on their own activities might be imposed in order to protect pedestrians. And since Illinois has rejected the doctrine of "coming to the nuisance," e.g., *City of Pana v. Central Washed Coal Co.*, 102 N.E. 992, 998 (Ill. 1913); *Oehler v. Levy*, 85 N.E. 271, 273-74 (Ill. 1908); *Wheat v. Freeman Coal Mining Corp.*, 319 N.E.2d 290, 294 (Ill. App. 1974), owners who put their property to a sensitive use, as by using it for church services, might sue the industrial users for nuisance even though the latter had preceded them in the zone. If, moreover, the use of the zone ever became predominantly nonindustrial, the zone might be rezoned to ban industrial uses. *Chicago Title & Trust Co. v. County of Cook*, 457 N.E.2d 1326, 1331-33 (Ill. App. 1983); see also *Fifteen Fifty North State Building Corp. v. City of Chicago*, 155 N.E.2d 97, 101-03 (Ill. 1958).

The problem with Northbrook's effort to show that these considerations create a *compelling* governmental interest in barring churches from the industrial zone is that until RLUIPA was enacted, and indeed for years afterward, the Village was content to allow membership organizations other than churches to buy land and build freely in the zone, no permit required. But the absence of a compelling governmental interest is not relevant to a RLUIPA claim unless the challenged restriction on the use of property imposes a substantial burden on the religious organization, and this, as we said, Petra has failed to show.

None of Petra's other claims has merit enough to warrant discussion. The judgment of the district court is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*